UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRED HENDERSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:23-cv-00600-SRC ) |
| MARTIN O'MALLEY,<br>Commissioner of the Social Security<br>Administration,[1] | ) ) ) ) |
| Defendant. | ) ) |

**Memorandum and Order**

Fred Henderson seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying his application for disability-insurance benefits under Title II of the Social Security Act. The Court affirms the Commissioner's decision.

**I.      Procedural history**

In February 2019, Henderson filed an application for disability-insurance benefits with the Social Security Administration. Tr. 166–82. The Administration denied his application, Tr. 100–04, so he sought rehearing before an Administrative Law Judge, *see* Tr. 105–10, who also denied Henderson's application, Tr. 26–39. Henderson then sought review by the Appeals Council, Tr. 162–65, but the Council denied his request, Tr. 1–7.

Henderson appealed to this Court, Tr. 698–99, which, on motion of the Commissioner of the Administration, reversed and remanded the ALJ's decision for re-evaluation of Henderson's claim, Tr. 739–42. After a second hearing, the ALJ granted Henderson disability-insurance

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Martin O'Malley for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

benefits as of May 23, 2022, but denied him benefits for the period from June 26, 2018, through May 22, 2022.  Tr. 624–39.  Four months later, Henderson filed suit in this Court appealing the ALJ's latest decision, doc. 1, which became the final decision of the Commissioner subject to this Court's review, *see* 20 C.F.R. §§ 404.984(d).

## II.    Standard for determining disability under the Act

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability.  20 C.F.R. § 404.1520(a)(1).  First, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment[] . . . [that] significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c)).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482

2

U.S. 137, 153 (1987); then citing *id.* at 158 (O'Connor, J., concurring); and then citing 20 C.F.R. § 404.1521(a)).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv).  "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations."  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)).  While RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable

3

effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3).  If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

### III.   The ALJ's decision

Applying the foregoing, the ALJ concluded that Henderson "was not disabled prior to May 23, 2022, but became disabled on that date."  Tr. 628.  First, she found that Henderson met "the insured status requirements of the Social Security Act through December 31, 2023." Tr. 629.  Second, she found that Henderson engaged in substantial gainful activity from June 26, 2018—Henderson's alleged disability onset date—through August 8, 2018, but that after that period, Henderson's minimal earnings "[did] not rise to the level of substantial gainful activity." Tr. 629–30.  Third, she found that Henderson suffered from two severe impairments: degenerative joint disease in his left knee, and degenerative disc disease in his lumbar spine. Tr. 630.  Fourth, she found that Henderson did not suffer from an impairment or combination of

4

impairments meeting or medically equaling the severity of one of the presumptively disabling impairments.  Tr. 631.  Fifth, she found that Henderson had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following restrictions:

> [T]he claimant should never operate foot controls. He must use a cane to ambulate, but can still lift, carry, push, or pull at the standard sedentary limits. He should never climb ropes, ladders, or scaffolds. He can occasionally climb ramps and stairs. He should never balance (as defined in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations). He can occasionally stoop. He can never kneel, crouch, or crawl. The claimant should have no exposure to extreme heat, extreme cold, unprotected heights, or hazardous machinery.

Tr. 632.  Sixth, she found that since his alleged disability onset date, he had been unable to perform any past relevant work.  Tr. 637.  Finally, she concluded that considering Henderson's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Henderson could perform before May 23, 2022, but no such jobs existed that Henderson could perform after that date.  Tr. 637–38.  Accordingly, the ALJ found that Henderson qualified as "disabled" only as of May 23, 2022 for benefits purposes.  Tr. 638–39.

## IV.    Standard of review

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his decision. 42 U.S.C. §§ 1383(c)(3), 405(g).  If it does, the Court must affirm the decision.  *Id.*  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "[T]he threshold for such evidentiary sufficiency is not high." *Id.*  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)).  The Court "do[es] not reweigh the

5

evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)).  The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

**V.      Discussion**

The ALJ determined that from June 26, 2018, through May 22, 2022, subject to certain parameters, Henderson had the RFC to perform sedentary work, which the Administration's regulations define as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).  The ALJ determined that the following conditions applied to her sedentary-work RFC finding:

> [Henderson] should never operate foot controls.  He must use a cane to ambulate, but can still lift, carry, push, or pull at the standard sedentary limits.  He should never climb ropes, ladders, or scaffolds.  He can occasionally climb ramps and stairs.  He should never balance (as defined in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations).  He can occasionally stoop.  He can never kneel, crouch, or crawl.  The claimant should have no exposure to extreme heat, extreme cold, unprotected heights, or hazardous machinery.

Tr. 632.

Henderson insists that during the relevant period, he could not perform even sedentary work, no matter the limiting conditions listed by the ALJ.  *See* doc. 14.  In particular, he

6

challenges the ALJ's RFC determination, making two arguments:  that the ALJ failed to properly evaluate the medical opinions in the record, and that the ALJ failed to properly evaluate Henderson's own testimony regarding the severity of his pain.  *See id.* at 3–15.[2]  The Court addresses each argument in turn.

> **A.  The ALJ properly evaluated the prior administrative medical findings and medical opinions in the record.**

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[] or prior administrative medical finding[]."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must evaluate the persuasiveness of prior administrative medical findings and medical opinions in light of several factors, the most important of which are supportability and consistency.  *Id.* at § 404.1520c(a)–(c); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022).  The consistency factor states that "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be."  20 C.F.R. § 404.1520c(c)(2).  Similarly, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinions or prior administrative medical finding[] will be."  *Id.* at § 404.1520c(c)(1).  An ALJ must discuss the consistency and supportability factors in her decision, but need not explain how she considered the other factors.  *Id.* at § 404.1520c(b)(2).  Nor does the ALJ need to explicitly use the words "consistent" or "support," or some variation thereof, in the analysis:  "word choice alone does not warrant reversal."  *Atwood v. Kijakazi*, No.

---

[2] The Court cites to page numbers as assigned by CM/ECF.

7

4:20-cv-1394-JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (citing *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013)).

The ALJ met that standard here by discussing whether and how the medical opinions reflect consistency with, and supportability from, the objective evidence.  First, the ALJ considered the opinion of state-agency medical consultant Dennis DeGraw, who concluded that Henderson retained the RFC to do light exertional work with some standing and sitting limitations.  *See* Tr. 86–96.  The ALJ reviewed the medical evidence and determined that DeGraw's opinion did not suffice to account for "the combined effects of [Henderson]'s back and knee pain," which the ALJ determined called for "a [further] restriction to sedentary lifting and carrying."  Tr. 635.  Next, where state-agency psychological consultant Steven Akeson had found that Henderson exhibited no medically determinable medical impairment, the ALJ found that by contrast, the evidence showed Henderson suffered from depression, a determinable medical impairment—though not with sufficient severity to "result[] in significant functional limitations."  *Id.*  The psychological examinations that J. Coulter and Kim Stalker performed of Henderson, concluding that Henderson experienced no relevant limitations in his work-related mental functional abilities, supports the ALJ's view, Tr. 715–17, 1103–08, and the ALJ found Coulter's and Stalker's opinion consistent with Henderson's statements and treatment records, Tr. 635.

Next, the ALJ cited to Exhibits 6A and 9A in the record, which contain the opinions of state-agency medical consultants Renu Debroy, Barbara Markway, and Jane Murray.  *See* Tr. 709–38.  Though the ALJ only named Debroy, the decision accurately noted that the opinions found Henderson limited to sedentary work.  Tr. 635; *see* Tr. 709–38.  The ALJ found that assessment "mostly persuasive," but, among other modifications, noted that because Henderson

8

used a cane to walk, additional limitations on Henderson's RFC would better reflect the extent of his ailments.  Tr. 635.  Similarly, the ALJ found persuasive the opinion of Aemer Massay, who determined that Henderson had a medical need to use a cane when walking.  Tr. 636.  The ALJ cited supporting evidence in the record indicating that Henderson limped without a cane, but had a normal gait with a cane.  *Id.*

The ALJ also explained why she found the remaining opinions inconsistent with, and unsupported by, the evidence of record.  First, the ALJ considered the opinion of Catherin Ash, who concluded that Henderson could not walk for 50 feet; in rejecting that view, the ALJ pointed to record evidence showing that Henderson had a normal gait when using a cane and normal strength in his lower extremities.  *Id.*  Second, the ALJ considered the opinion of Daniel Martin, who concluded that Henderson could lift nothing at all, could not stand or walk for two hours, and would require unscheduled breaks from work.  *Id.*; *see* Tr. 604–06.  The ALJ found Martin's opinion unpersuasive because it found no evidence to support such limitations, and noted contrary evidence in the record showing Henderson able to walk normally with a cane, perform a partial squat, and enjoying normal strength in his lower extremities.  Tr. 636.  Third, having noted those abilities, the ALJ found unpersuasive the opinion of Thomas Hawk that Henderson was "incapable of work that involves standing, walking, or even sitting for an extended period of time," because the opinion did not explain the term "extended period of time," nor did the opinion actually outline Henderson's physical limitations.  *Id.*; *see* Tr. 958–61.  Fourth, the ALJ also rejected the contrary opinion of John Krause, who had returned Henderson to full duty:  the

9

ALJ explained that Henderson "clearly has ongoing limitations[] that would prevent him from performing full duty work."  Tr. 636.

Finally, Henderson argues that the ALJ failed to explicitly evaluate the opinions of Barbara Markway and Jane Murray, doc. 14 at 10, but both opinions feature in Exhibit 9A, *see* Tr. 730–38, which the ALJ cited in her discussion of Dr. Debroy's opinion, *see* Tr. 635.  In Exhibit 9A, Markway opined that Henderson suffers from a medically determinable, but non-severe, mental impairment, Tr. 732–33—a conclusion that Henderson does not challenge, *see* doc. 14, and which matches the conclusion that the ALJ herself reached without relying on Markway's opinion, *see* Tr. 635.  Accordingly, even if the ALJ should have compared Markway's opinion to the objective evidence, that mistake constitutes no more than harmless error.  *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [the Claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred.").  Further, in Exhibit 9A, Murray opined that Henderson could perform sedentary work subject to certain restrictions—an opinion identical to that of Dr. Debroy, which, as the Court has explained, the ALJ properly evaluated.  *Compare* Tr. 719–24 (opinion of Dr. Debroy) *with* Tr. 734–36 (opinion of Dr. Murray).  Accordingly, a proper evaluation of Debroy's opinion doubles as a proper evaluation of Murray's, and even if the ALJ should have separately discussed Murray's opinion, her failure to do so constitutes harmless error.  *See Byes*, 687 F.3d at 917; doc. 14 (in which Henderson does not explain how the ALJ's discussion of Murray's opinion, given her discussion of Debroy's, would have yielded a different decision).

At bottom, the ALJ considered the full range of medical opinions in the record, then ascertained which opinions have the support of and consistency with the objective medical

10

evidence. Tr. 632–37. That much suffices for this Court to affirm the ALJ's decision: at this stage, the Court does not consider the evidence de novo or second-guess the manner in which the ALJ weighed various medical opinions and testimony. 42 U.S.C. §§ 1383(c)(3), 405(g); *Reece v. Colvin*, 834 F.3d at 908. Accordingly, the Court finds that the ALJ properly evaluated the prior administrative medical findings and medical opinions in the record.

> **B.     The ALJ properly considered Henderson's subjective complaints about his symptoms.**

Finally, Henderson claims that the ALJ improperly considered his subjective complaints. Doc. 14 at 10–15. An ALJ must consider several factors when evaluating whether a claimant's statements regarding her symptoms are consistent with medical and other evidence in the record. 20 C.F.R. § 404.1529(a), (c); SSR 16-3p, 2017 WL 5180304. Those factors—colloquially referred to as the "*Polaski* factors" in the Eighth Circuit—include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

First, Henderson argues that the ALJ's decision "lacks proper consideration of the *Polaski* factors." Doc. 14 at 14 (italics added). But as the Eighth Circuit has explained, an ALJ "need not explicitly discuss each *Polaski* factor. It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Here, the ALJ's decision affirmatively states that the ALJ considered all of Henderson's symptoms based on the requirements of Section 404.1529 and Social Security Ruling 16-3p,

11

Tr. 633, and as discussed further below, the decision evidences that the ALJ considered each of the factors.

Second, Henderson argues that the ALJ erred by failing "to make an express credibility determination." Doc. 14 at 15. But Section 404.1529 does not require the ALJ to do so. In fact, Social Security Ruling 16-3p rescinded the sub-regulatory policy that discussed credibility. In doing so, it expressly "eliminat[ed] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character" and to "more closely follow [the] regulatory language." SSR 16-3p, 2017 WL 5180304, at *2. Thus, the ALJ did not err by failing to make a credibility determination when evaluating Henderson's subjective complaints.

Third, Henderson claims that the ALJ failed to "set forth the inconsistencies relied upon to discredit[] [Henderson]'s testimony." Doc. 14 at 15. But an ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson*, 361 F.3d at 1070 (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997)). The Court finds that the ALJ's decision meets this standard.

The ALJ recounted Henderson's testimony to the effect that he could only sit for 20 minutes at a time before needing to stand and stretch to alleviate discomfort; that he could not stand for prolonged periods because his knee could not support him; and that he needed to sit with his leg elevated for three hours each day to alleviate swelling in the joint. Tr. 633. But the ALJ found that while Henderson's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported" by the record. Tr. 634. As the ALJ's citations to the record reflect, and as discussed above, substantial

12

evidence exists to support that determination.  At physical therapy shortly after Henderson's an initial evaluation diagnosed the injury as a contusion of the knee.  Tr. 407.  Though the pain in his knee did not improve for some time, an x-ray performed about a year later found only "minimal" arthritic changes in the knee.  Tr. 374–75.  An evaluation at the same time of the x-ray noted that Henderson retained full strength ("5/5") in his left knee.  Tr. 375.

Henderson underwent arthroscopic surgery on his left knee in October 2019 to repair a tear in his medial meniscus.  Tr. 601, 504, 509.  Over the following months, the record reflects that his strength and range of motion steadily improved with physical therapy.  Tr. 515, 519.  By May 2020, he could walk with no more than a "mild" limp and exhibited full extension, 115 degrees of flexion, and no instability in his left knee.  Tr. 942–43.  At a physical examination the following year, Henderson could walk without a cane with no more than a "slight" limp, could walk on his heels and toes, could stand and hop on his right leg, could stand on his left foot, could partially squat, and could stand from his chair without difficulty.  Tr. 1113–14.  Finally, the ALJ considered that Henderson reported good pain relief from treatment with prescription-strength ibuprofen and cyclobenzaprine.  Tr. 1111.  Accordingly, the ALJ acknowledged and considered the appropriate factors when evaluating Henderson's subjective complaints under Section 404.1529, and substantial evidence supports the ALJ's conclusion that on the medical evidence in the record, Henderson retains the RFC to perform sedentary work subject to the conditions the ALJ provided.

## VI.    Conclusion

For the reasons explained above, the Court finds that the ALJ's detailed analysis and citations to the record demonstrate that substantial evidence supports the ALJ's RFC determination.  Accordingly, the Court affirms the decision of the Commissioner of Social

Security and dismisses Henderson's [1] Complaint with prejudice.  A separate judgment accompanies this Memorandum and Order.

So ordered this 28th day of August 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE